MISSOURI ETHICS COMMISSION,
Respondent,

v.

Ronald S. WILSON, Appellant.

No. WD 53960.

Missouri Court of Appeals,
Western District.

Dec. 16, 1997.

Kathleen Murphy Markie, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Mark D. Schoon, Asst. Atty. Gen., Jefferson City, for respondent.

Before ULRICH, C.J., and HANNA and ELLIS, JJ.

ULRICH, Chief Judge.

Ronald S. Wilson appeals from a decision of the Circuit Court of Cole County reversing the decision of the Administrative Hearing Commission (AHC) that overturned the Missouri Ethics Commission's assessment of a $240 late fee for failing to timely file a financial interest statement as a "decision-making public servant" under section 105.483, RSMo 1994. Mr. Wilson argues on appeal that the decision of the AHC finding that his position as Director of the University of Missouri Extension Conference Office did not satisfy the statutory definition of "decision-making public servant," section 150.450 RSMo 1994, and, hence, was not required to file a financial interest statement, section 105.483 RSMo 1994, was supported by substantial evidence. The trial court, therefore, erred, he concludes, in reversing the AHC's finding. The decision of the Circuit Court of Cole County is reversed.

## FACTS

Ronald S. Wilson is the Director of the University Extension Conference Office ("the Office") at the University of Missouri. The Office assists departments of the University of Missouri and associations and agencies not affiliated with the University with the logistical and administrative details for hosting conferences. The Office assists client organizations in arranging for speakers, conference facilities, collecting registration fees, sending receipts and confirmation letters, preparing name badges, assuring that the program is printed and arranging for meals and sleeping rooms. The Office sometimes prepares spec-

ifications and proposals for client program sponsors. The Office is also responsible for buying items used in conferences such as notebooks and paper. As Director, Mr. Wilson is responsible for supervising the operations of the Office and the twenty Office employees.

While the Office helps coordinate conferences, it is not responsible for substantive decisions regarding conferences. The client academic department or association sponsoring a program makes all substantive decisions regarding its conference including the subject matter, format and location of the conference. A planning committee or the program chairperson, rather than the Office, chooses the speaker, negotiates fees and approves speaker contracts when the conference is University-sponsored.

Mr. Wilson's duties as Director also include approving all purchases the Office makes for less than $1,000.00. Mr. Wilson's assistant director, Joy Williams, also has approval authority for Office purchases under $1,000.00. After approval of a purchase by either Mr. Wilson or Ms. Williams, the proposed purchase is forwarded to the University of Missouri Accounting Office for final approval and payment. Certain purchases, such as those for alcohol, are even more closely scrutinized by the Accounting Office. Purchases made for more than $1,000.00 can be authorized only by the Purchasing Department of the University. Neither Mr. Wilson nor Ms. Williams are authorized to approve purchases over $1,000.00.

Mr. Wilson was designated by the University as a decision-making public servant pursuant to section 105.483, RSMo 1994, on a list sent to the Missouri Ethics Commission. This designation is the basis for the Ethics Commission's determination that Mr. Wilson is compelled to file a financial interest statement. The Ethics Commission assessed Mr. Wilson a $240.00 late fee for his having filed the statement twenty-four days after the deadline.

Mr. Wilson filed a complaint with the AHC disputing the Ethics Commission's late filing fee assessment. Mr. Wilson argued that he did not meet the statutory definition of a decision-making public servant.[1] Mr. Wilson presented an organizational chart of the University that revealed only three of the nine University Directors had been designated as decision-making employees. Mr. Wilson also noted that the chief fiscal officer for the Extension Division who supervised and managed all Directors and oversaw a $17 million budget was not designated as a decision-maker. Mr. Wilson characterized his own position as lower mid-level management. Mr. Wilson testified that he never asked the University to remove his name from the list because he believed the request would be futile.

At the conclusion of the evidence, the AHC found in Mr. Wilson's favor. The AHC noted that the definition of "decision-making public servant" in section 105.450 had two requirements: (1) that the individual have certain specified authority and (2) that the individual be designated as a decision-making public servant. The AHC found that although Mr. Wilson had been designated a decision-making public servant, the record did not establish his job responsibilities satisfied the definition of "decision-making public servant" in section 105.450.

The Ethics Commission appealed the AHC's decision to the Circuit Court of Cole County. The circuit court reversed the holding of the AHC, finding that Mr. Wilson satisfied the requirements of section 105.450 because he had been designated by the University as a decision-making public servant and because he exercised primary supervisory responsibility over the purchasing decisions of the Office. The court further held that anyone properly designated a decision-making public servant is automatically required to file a financial interest statement. The court ordered Mr. Wilson to pay the $240.00 late fee. Mr. Wilson appeals the decision of the circuit court.

1. Mr. Wilson also argued his delay in filing was in part the result of the Ethics Commission's errant mailing of the notification to the Coordinating Board for Higher Education resulting in his receiving the notification two weeks after the filing deadline. As Mr. Wilson does not raise this issue on appeal, it need not be addressed.

## STANDARD OF REVIEW

The AHC, not the judgment of the circuit court, is reviewed. *Arledge v. Progressive Tire Distribution,* 924 S.W.2d 506, 509 (Mo. App.1996). The circuit court is afforded no deference in its determinations of law, and this court reviews those determinations *de novo. Johnson v. Denton Constr. Co.,* 911 S.W.2d 286, 287 (Mo. banc 1995).

## I. MR. WILSON WAS NOT REQUIRED TO FILE A FINANCIAL INTEREST STATEMENT PURSUANT TO SECTION 105.483

As his sole point on appeal, Mr. Wilson argues that the AHC's decision that found he was not a decision-making public servant and, hence, was not required to file a financial interest statement was supported by competent and substantial evidence, was not contrary to law, did not exceed the AHC's authority and was not an abuse of discretion. Thus, he argues, the circuit court's decision reversing the finding of the AHC was error. Mr. Wilson specifically argues that for section 105.450 to compel a person to file a financial interest statement, the individual must be designated as a decision-making public servant *and* satisfy the definition of a decision-making public servant. He asserts that because he did not satisfy the statutory definition of decision-making public servant he was not required to file a financial interest statement. The Ethics Commission counters that Mr. Wilson's designation by the University as a decision-making public servant automatically required him to file a financial interest statement and, in any event, Mr. Wilson met the statutory definition of decision-making public servant.

Section 105.483 requires that "[a]ny person identified as a decision-making public servant pursuant to subdivision (6) of section 105.450" file a financial interest statement. § 105.483, RSMo 1994. Section 105.450(6) defines a "[d]ecision-making public servant" as "an official, appointee or employee of the offices or entities delineated in paragraphs (a) to (i) of this subdivision who exercises supervisory authority over the negotiation of contracts, *or* has the legal authority to adopt or vote on the adoption of rules and regulations with the force of law *or* exercises primary supervisory responsibility over pur-

chasing decisions *and* is designated by one of the following officials or entities as a decision-making public servant: (i) A board of regents or board of curators of a state institution of higher education." § 105.450(6), RSMo 1994 (emphasis added).

The unambiguous statutory language of sections 105.483 and 105.460 clearly require that a person be both designated as a decision-making public servant and satisfy section 105.460's statutory definition of decision-making public servant before being required to file a financial interest statement under section 105.483. The requirement of section 105.483 to file a financial interest statement applies only if a "person [is] identified as a decision-making public servant *pursuant to subdivision (6) of section 105.450.*" § 105.483 RSMo (emphasis added). An employee, therefore, must satisfy section 105.450's definition of "decision-making public servant" before being required to file a financial interest statement pursuant to section 105.483. Contrary to the Ethics Commission's contention, mere designation as a decision-making public servant does not invoke the status of decision-making public servant under section 105.450. *Missouri Ethics Comm'n v. Cornford,* 955 S.W.2d 32, 35 (W.D.Mo. 1997). While designating a person as a decision-making public servant is required, section 105.450 also requires that designated decision-making public servants "[exercise] supervisory authority over the negotiation of contracts, or [have] the legal authority to adopt or vote on the adoption of rules and regulations with the force of law or [exercise] primary supervisory responsibility over purchasing decisions." § 105.450 RSMo. An employee, therefore, is not required to file a financial interest statement unless the persons is both identified as a decision-making public servant *and* satisfies the statutory definition of "decision-making public servant." *Cornford,* 955 S.W.2d at 35.

Requiring that the statutory definition of decision-making public servant be satisfied before the person is required to file a financial interest statement is consistent with the statutory language in section 105.955, RSMo. Section 105.955.18 provides that "[f]rom time to time but no more frequently than annually

that commission may request the officials and entities *described in subdivision (6) of section 105.450* to identify for the commission in writing those persons associated with such office or entity which such office or entity has designated as a decision-making public servant. Each office or entity delineated in subdivision (6) of section 105.450 receiving such a request shall identify those so designated within thirty days of the commission's request." § 105.955.18, RSMo 1994 (emphasis added). While section 105.955 authorizes designated entities, such as the University of Missouri, to identify decision-making public servants, the unambiguous language of section 105.955, like section 105.483, requires that the identified employees satisfy the statutory definition of "decision-making public servant" in section 105.450. The AHC, therefore, was correct in its determination that Mr. Wilson must satisfy the statutory definition of "decision-making public servant" before being required to file a financial interest statement.

[redacted] The Ethics Commission, however, contends that it lacked authority to waive Mr. Wilson's obligation to file a financial interest statement and to forego assessment of the late filing fees. The legislature is deemed to have intended what the enactment states directly. *A.T. & T. v. Wallemann,* 827 S.W.2d 217, 223 (Mo.App.1992). Where the statute is not explicit, nevertheless, but confers powers and duties in general terms, resort to the necessary implications of the language to determine legislative intent is permitted. *Id.* at 223–24 (citing *State ex rel. McKittrick v. Wymore,* 345 Mo. 169, 132 S.W.2d 979 (Mo. banc 1939)). An implied power within this meaning is the power necessary for the efficient exercise of the power expressly conferred. *Id.* at 224. In that sense, that which is implied in a statute is as much a part of it as that which is expressed. *Id.* The rule that extends a statute by necessary implication has been given frequent application in the construction of laws delegating powers to public officers and administrative agencies. The powers and duties of a public agency, thus, include "those lying fairly within its scope, those essential to the accomplishment of the main purpose for which the office was created, and those which, although incidental and collateral, serve to promote the accomplishment of the principal purposes." *Id.*

[redacted] Section 105.963.3 expressly gives the Ethics Commission the power to assess late fees on those "*required* to file a financial interest statement." In order to be required to file a financial interest statement, the employee must be designated a decision-making public servants *and* meet the statutory definition of "decision-making public servant." § 105.483 RSMo; § 105.450 RSMo; *Cornford,* 955 S.W.2d at 35 Because only decision-making public servants are required to file financial interest statements and the Ethics Commission may only impose fees on those required to file financial interest statements, the Ethics Commission necessarily is empowered to determine whether employees are decision-making public servants and, hence, required to file financial interest statements.

[redacted] The Ethics Commission's contention that the AHC lacked power to review its assessment of late fees is likewise without merit. The AHC is an "adjunct executive agency" that exercises agency adjudicative power, a power that extends to the ascertainment of facts and the application of existing law to those facts. *Monroe County Nursing Home Dist. v. Department of Social Serv., Div. of Med. Serv.,* 884 S.W.2d 291, 293 (Mo. App.1994); *Lederer v. State, Dept. of Social Serv., Div. of Aging,* 825 S.W.2d 858, 862 (Mo.App.1992). The AHC performs the same role as the administrative hearing officer authorized to hear contested cases within an agency. *Missouri Dept. of Social Serv. v. Administrative Hearing Commission,* 826 S.W.2d 871, 874 (Mo.App.1992). The function intended by the legislature for the AHC is to render, on the evidence heard, the administrative decision of the agency. *Id.; Monroe County Nursing Home,* 884 S.W.2d at 293. The decision of the AHC then becomes the decision of the department. *Id.* The Ethics Commission has the power to review whether Mr. Wilson was properly classified a decision-making public servant, and, therefore, required to file a financial interest statement. Pursuant to legislative mandate, the AHC, thus, is empowered to determine, after analysis of the evidence, whether Mr. Wilson was properly classified

as a decision-making public servant. *Cornford*, 955 S.W.2d at 35–36. The AHC, therefore, acted within its power in determining that Mr. Wilson's classification as a decision-making public servant did not satisfy the statutory prerequisites.

Scrutiny of an employee's classification as a decision-making public servant is consistent with sound policy considerations. An employee's classification as a decision-making public servant has several ramifications for the employee. In addition to being required to file a financial interest statement, decision-making public servants may be penalized pursuant to section 105.492 for failing to properly file the statement. § 105.492, RSMo 1994. Section 105.492 authorizes withholding of the employee's paycheck, suspension of the employee from office if the employee fails to file a statement within thirty days of receiving notice from the Ethics Commission and prosecution for a class B misdemeanor if the employee omits facts in the financial statement. § 105.492, RSMo. Additionally, decision-making public servants are assessed a $10 per diem charge for each day a statement is not timely filed. § 105.963.3, RSMo 1994. The negative ramifications that can ensue after an employee is classified a decision-making public servant warrant administrative and judicial review.

Whether the AHC correctly determined that Mr. Wilson did not satisfy the statutory definition of decision-making public servant must be determined. The parties agree that Mr. Wilson was designated by the University as a decision-making public servant and, hence, the second prong of section 105.450 was satisfied. The parties also agree that Mr. Wilson did not exercise supervisory authority over the negotiation of contracts and did not have authority to adopt or vote on the adoption of rules and regulations with the force of law. Whether Mr. Wilson exercised "primary supervisory responsibility over purchasing decisions" as Director of the Office must, therefore, be determined.

■ The Ethics Commission first contends the AHC's decision was in error because, under section 105.450, Mr. Wilson need only have supervisory responsibility over purchasing decisions rather than *primary* supervisory responsibility over purchasing decisions. The unambiguous language of section 105.450, however, clearly states that an employee must have "primary supervisory responsibility" in order to be a decision-making public servant. In construing statutes, each word, clause, sentence and section of a statute are given effect. *State ex rel. Mo. State Bd. of Registration for Healing Arts v. Southworth*, 704 S.W.2d 219, 225 (Mo. banc 1986); *Missouri Dept. of Social Serv. Div. of Med. Serv. v. Great Plains Hosp., Inc.*, 930 S.W.2d 429, 438 (Mo.App. 1996). Giving effect to the language of section 105.450, therefore, required the AHC and the Ethics Commission to determine that Mr. Wilson exercised *"primary* supervisory responsibility over purchasing decision[s]" rather than mere supervisory responsibility. § 105.450, RSMo.

■ The evidence reveals the AHC's determination that Mr. Wilson did not satisfy the statutory definition of "decision-making public servant" is supported by competent and substantial evidence. The cardinal rule of statutory construction is that the legislature's intent is determined from the language of the statute and that each and every word in a statute is read in its plain and ordinary meaning. *Brownstein v. Rhomberg–Haglin and Assoc., Inc.*, 824 S.W.2d 13, 15 (Mo. banc 1992); *Wheeler v. Board of Police Comm'rs of Kan. City*, 918 S.W.2d 800, 803 (Mo.App. 1996). Where a word used in a statute is not defined, the plain and ordinary meaning of the word is derived from a dictionary. *Moon Shadow, Inc. v. Director of Revenue*, 945 S.W.2d 436, 437 (Mo. banc 1997); *State v. Carson*, 941 S.W.2d 518, 521 (Mo. banc 1997). "Primary," as employed in section 105.450, was not defined by the legislature. In determining the plain and ordinary meaning of "primary," reference to a dictionary is, therefore, proper. "Primary" is defined as "of first rank, importance or value." WEBSTER'S DICTIONARY 925 (10th ed.1994).

Applying the plain and ordinary meaning of "primary," the evidence reveals that Mr. Wilson did not exercise "primary supervisory responsibility over purchasing decisions" as required by section 105.450. Mr. Wilson lacked any authority to make purchasing decisions when a purchase exceeded $1,000.00. Instead, the Purchasing Department of the University retained sole authority to make

such purchases. While Mr. Wilson did have authority to approve decisions for purchases of less than $1,000.00, his authority was not "primary." As the AHC found, not only did Mr. Wilson share his authority with Ms. Williams, but their authority was subject to the substantive review of the Accounting Office. The Accounting Office and the Purchasing Department, therefore, retained "primary" responsibility for the Office's purchases as their approval was first in rank, order and importance. Because Mr. Wilson did not have primary responsibility over the Office's purchasing decisions, he did not satisfy the statutory requirements for classification as a decision-making public servant. The AHC, thus, properly determined that Mr. Wilson was not required to file a financial interest statement. Point one is granted.

The decision of the Circuit Court of Cole County is reversed, and the decision of the AHC is reinstated.

All concur.