Robert L. CURRY, Claimant,

v.

OZARKS ELECTRIC CORPORATION
and Continental Western Insurance
Company, Appellants,

and

Cox Health Systems, Respondent.

No. SC 82969.

Supreme Court of Missouri,
En Banc.

March 20, 2001.

Jeffrey T. Davis, Kenneth H. Reid, Springfield, for Appellants.

Jason N. Shaffer, Steven E. Marsh, Hulston, Jones, Gammon & Marsh, Springfield, for Respondent.

Joanne E. Joiner, Associate Gen. Counsel, Gerald M. Sill, Sr., Vice President & Gen. Counsel, Jefferson City, for Amicus Curiae Missouri Hospital Association.

LIMBAUGH, Judge.

This is a workers' compensation case in which employer, Ozarks Electric Corp. (Ozarks), and its insurer, Continental Western Insurance Company, appeal a decision of the Labor and Industrial Relations Commission (Commission) awarding a direct payment of $105,968.35 to Cox Health Systems (Cox) for medical services rendered to Ozarks' employee, Robert Curry. After opinion by the Court of Appeals, Southern District, this Court granted transfer, Mo. Const. art. V, sec. 10, to determine: (1) whether the Commission had authority to award Cox direct payment under section 287.140.13(6), RSMo 1994, after Ozarks and Curry entered into a section 287.390, RSMo 1994, compromise settlement; and (2) whether Cox presented sufficient competent evidence that Ozarks authorized Cox's services in advance, as required for a direct payment claim under section 287.140.13(6). The decision of the Commission is affirmed.

Curry was injured while working for Ozarks, an employer subject to Missouri workers' compensation law, chapter 287, RSMo 1994. Ozarks' employees called an ambulance to take Curry to Cox Medical Center, operated by Cox, where he remained under treatment for one month. The total bill was $112,573.22. Curry later filed a workers' compensation claim. Because the hospital bill was not paid within 90 days of Curry's discharge, Cox filed notice of a claim for direct payment, as provided by section 287.140.13(6).

Curry, Ozarks and Continental entered into a compromise settlement of Curry's workers' compensation claim, in accordance with section 287.390, for a lump sum payment of $33,597.20. An Administrative Law Judge (ALJ) approved the settlement agreement, which provided that Cox's direct payment claim would remain open for adjudication. Cox was not a party to the settlement agreement. After a hearing on Cox's direct payment claim, the ALJ found that Cox's medical services were not "authorized in advance" by Ozarks or Continental, as required by section 287.140.13(6) and, therefore, denied direct payment. The Commission reversed the ALJ's decision and ruled that Ozarks did authorize Cox's medical services to treat Curry's work-related injury. The Commission disallowed $6,604.87 in charges directly related to alcohol withdrawal treatment and ordered Ozarks to pay Cox $105,968.35 of Curry's $112,573.22 bill.

■ The standard of review is that "[t]he Court will modify, reverse, remand or set aside an award only if the Commission acted without or in excess of its powers, the award was procured by fraud, the facts found by the Commission do not support the award, or there was not sufficient competent evidence in the record to warrant the making of the award." *Akers v. Warson Garden Apartments,* 961 S.W.2d 50, 52 (Mo. banc 1998); sec. 287.495.

■ Appellants Ozarks and Continental first allege that the Commission lacked jurisdiction or authority to award Cox direct payment of Curry's medical fees under section 287.140.13(6) after the ALJ approved the compromise settlement of Curry's workers' compensation claim. To determine the extent of the Commission's authority and the effect of a compromise settlement, this Court looks to the relevant statutes, which are unambiguous on these points. Section 287.390, which governs employer-employee workers' compensation settlements, provides in pertinent part:

1. Nothing in this chapter shall be construed as preventing the parties to claims hereunder from entering into voluntary agreements in settlement thereof ... nor shall any agreement of settlement or compromise of any dispute or claim for compensation under this chapter be valid until approved by an administrative law judge or the commission, nor shall an administrative law judge or the commission approve any settlement which is not in accordance with the

rights of the parties as given in this chapter....

3. [A]n employee shall be afforded the option of receiving a compromise settlement as a one-time lump sum payment. A compromise settlement approved by an administrative law judge or the commission shall indicate the manner of payment chosen by the employee.

Section 287.140.13(6), which authorizes health care providers to file claims for direct payment, provides:

A hospital, physician or other health care provider whose services have been authorized in advance by the employer or insurer may give notice to the division of any claim for fees or other charges for services provided for a work-related injury that is covered by this chapter.... Where such notice has been filed, the administrative law judge may order direct payment from the proceeds of any settlement or award to the hospital, physician or other health care provider for such fees as are determined by the division....

Noting that the settlement approved under section 287.390 is conclusive and irrevocable and constitutes *res judicata* as to Curry's workers' compensation claim, *Conley v. Treasurer*, 999 S.W.2d 269, 274 (Mo.App.1999), appellants assert that the settlement ended the Commission's jurisdiction over all related claims. As they explain, direct payments to Cox under section 287.140.13(6) are authorized only to the extent of the settlement with Curry. In this regard, they contend that the language of the statute—that "the administrative law judge may order direct payment from the proceeds of any settlement or award to the hospital, physician or other health care provider"—is an indication of the legislature's intent not to create an independent claim for a separate award to a health care provider.

This Court disagrees. Although the statute refers to a single settlement, nothing in the statute precluded the Commission from bifurcating the settlement proceedings and hearing the direct payment claim separately from Curry's individual claim. With that understanding, the parties to the settlement and the ALJ who approved it expressly left Cox's claim open for adjudication, and necessarily intended that the $33,597.20 award to Curry was only a partial settlement. Under these circumstances, the Commission did not act without or in excess of its statutory power in awarding direct payment to Cox.

■ Appellants' second point is that, even if the Commission had jurisdiction to review Cox's claim and enter a direct payment award, it misapplied and misinterpreted section 287.140.13(6) when it found sufficient competent evidence in the record that Ozarks authorized Curry's treatment in advance. This Court reviews the evidence and inferences therefrom in the light most favorable to the award and will set aside the Commission's findings only if they are clearly contrary to the overwhelming weight of the evidence. *Akers*, 961 S.W.2d at 53.

■ The facts and reasonable inferences most favorable to the award are as follows: When Curry was injured at work, Ozarks employees called an ambulance to take him to Cox Medical Center for emergency treatment. Jerry Frizzell, president of Ozarks, was aware that Curry had been injured at work and hospitalized. Within three days, Jane Rhoades, an account clerk for Cox, spoke to Mr. Frizzell regarding Curry's hospital bill. He acknowledged that Curry's injury was job-related and told her to send everything to Ozarks' workers' compensation carrier and that he needed copies of all the bills so that he would know what treatment Curry received.

Application of section 287.140.13(6) to these facts turns on the meaning of the term "authorized." Because chapter 287 does not define "authorized," this Court will rely on the plain and ordinary meaning of the word, as derived from the dictionary. *See Hemeyer v. KRCG TV*, 6 S.W.3d 880, 881 (Mo. banc 1999). "Authorize" means "to endorse, empower, justify,

or permit by or as if by some recognized or proper authority (as custom, evidence, personal right, or regulating power)." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 146 (1986). The fact that Mr. Frizzell, as Ozarks' president, directed Cox to send Curry's medical bills to Continental and to him so that he would know what treatment Curry received is alone sufficient to establish that Ozarks "endorsed" or "permitted" Cox's services. Furthermore, there is no evidence to the contrary. Ozarks claims that it did not authorize Cox's services because neither Mr. Frizzell nor Continental promised or guaranteed payment for those services, but section 287.140.13(6) does not require an express promise to pay. Based on the record and the plain meaning of the statutory language, the Commission's conclusion that Ozarks authorized Cox's services in advance must be upheld.

The Commission's decision is affirmed.

PRICE, C.J., WHITE, HOLSTEIN, WOLFF and BENTON, JJ., concur.

LAURA DENVIR STITH, J., not participating.