STATE of Missouri ex rel. Jeremiah W. NIXON, Attorney General, State of Missouri, Respondent,

v.

Vince KARPIERZ, Reg. No. 1013181, and James L. McMullin, Appellants.

No. SC 84792.

Supreme Court of Missouri, En Banc.

May 27, 2003.

George A. Barton, Rasmussen & Barton, Kansas City, Daniel S. Hobart, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Overland, KS, Brian R. Barjenbruch, for appellants.

Virginia H. Murray, Jefferson City, for respondent.

RONNIE L. WHITE, J.

## I.

This case involves the Missouri Incarceration Reimbursement Act, sections 217.825 to 217.841.[1] After Appellant James L. McMullin secured judgment in favor of his incarcerated client, Vince Karpierz, the State initiated action to recover much of that judgment, including most of McMullin's attorneys fees. Because the validity of the Act is called into question, this Court has jurisdiction. Mo. CONST. ART. V, sec. 3. Reversed and remanded.

## II.

Karpierz's incarceration stems from illegal drug activity. While incarcerated, Karpierz instituted a civil action against the Kansas City Board of Police Commissioners, alleging violation of Missouri's Criminal Activity Forfeiture Act.[2] As a result of that litigation, Karpierz was awarded $46,470.04 against the Board, which reflects the judgment plus statutory interest.[3]

The State then sought and was granted reimbursement of expenses for $36,854.43, pursuant to section 217.835 of MIRA. McMullin appeals, arguing that the State is only entitled to the portion of the CAFA judgment less his attorneys fees and costs. McMullin seeks to enforce his contingency-fee agreement, which grants him recovery of litigation expenses plus fifty percent of remaining judgment. In support, McMullin charges that MIRA as applied by the trial court amounts to an unconstitutional taking of his property or alternately that he is entitled to the fees and expenses in equity.

## III.

Review of this bench-tried action is governed by *Murphy v. Carron.*[4] This Court will affirm the trial court's judgment "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law."[5]

## IV.

MIRA was created as a means of reimbursing the state for the cost of caring for and maintaining prisoners in the Missouri Department of Corrections. The assets

1. All statutory references are to RSMo 2000 unless indicated otherwise.

2. *Karpierz v. Easley,* 31 S.W.3d 505 (Mo.App. 2000)(set forth facts of underlying cause of action against the Board).

3. *Karpierz v. Easley,* 68 S.W.3d 565 (Mo.App.2002)(affirmed judgment in favor of Karpierz).

4. 536 S.W.2d 30, 32 (Mo. banc 1976).

5. *Id.*

that the attorney general can seek under MIRA are defined in section 217.827:

> (1)(a) "Assets", property, tangible or intangible, real or personal, belonging to or due an offender or a former offender, including income or payments to such offender from Social Security, workers' compensation, veterans' compensation, pension benefits, previously earned salary or wages, bonuses, annuities, retirement benefits, or from any other source whatsoever, including any of the following:
>
> . . .
>
> b. A money judgment received by the offender from the state as a result of a civil action in which the state, an agency thereof or any state employee or independent contractor where such judgment arose from a claim arising from the conduct of official duties on behalf of the state by said employee or subcontractor or for any agency of the state; [6]
>
> c. A current stream of income from any source whatsoever, including a salary, wages, disability, retirement, pension, insurance or annuity benefits or similar payments.

Neither party disputes that the judgment against the Board resulted in an "asset," allowing the State to pursue reimbursement under the MIRA. The sole question is whether the attorney who procured the judgment is entitled to his contingency fee and legal costs before the State can recover or whether the State's lien has priority over the attorney's claim.

The State's argument hinges on section 217.837.4, which states:

> The state's right to recover the cost of incarceration . . . shall have priority over all other liens, debts, or other incumbrances against real property or any other assets which are part of a prisoner's estate.

Simply put, the State argues that its costs for incarcerating Karpierz amount to a lien that has priority over Karpierz's lien for attorneys fees. In support, the State cites a statute and several cases stating that attorneys fees are considered a lien on the client's recovery.[7] The contention is that under section 217.837.4, the State's lien trumps McMullin's claim to his portion of the judgment.

## V.

Resolution does not entail a determination of the constitutionality of the statute or McMullin's right to recovery in equity, but rather turns on principles of statutory interpretation. This Court has a duty to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider

---

**6.** As noted above, the money awarded Karpierz was against the Kansas City Board of Police Commissioners. The Board was created pursuant to section 84.350 and has been labeled an "agency of the state." *State ex rel. Spink v. Kemp,* 365 Mo. 368, 283 S.W.2d 502, 514 (1955). Regardless, the money appears to have been paid by the city, not the state, which is consistent with a recent federal court decision that examined this issue in the context of sovereign immunity. *Gorman v. Easley,* 257 F.3d 738 (8th Cir.2001), *rev'd on other grounds by Barnes v. Gorman,* 536 U.S. 181, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002). Therefore, section 217.827(1)(b), concerning money judgments paid by the state, is not necessarily applicable to the action at hand. This Court does not speak on that issue here because the record does not contain information sufficient for such a determination, and, more importantly, as set forth below, the broad definition of "asset" contained in section 217.827(1)(a) resolves this dispute.

**7.** Section 484.130; *see, e.g., Jenkins v. Jenkins,* 243 S.W.2d 804, 807 (Mo.App.1951)(lawyer's interest in client's judgment was as a lien); *Gaunt v. Shelter Mut. Ins. Co.,* 808 S.W.2d 401, 405 (Mo.App.1991)(same).

words used in their plain and ordinary meaning.[8] Rules of construction are not to be used if the statute contains no ambiguity.[9]

In this case, the State urges focus almost exclusively on the statute regarding priorities. The answer to this dispute, however, lies in the legislature's definition of "asset," which must be considered before even reaching the issue of priorities. As set out above, section 217.827 defines an "asset" as "property . . . *belonging* to or *due* an offender" (emphasis added). Looking to the dictionary[10] for the plain and ordinary meaning of the terms in question combined with a measure of common sense leads to sound resolution.

As for the phrase "property . . . *due* an offender," the Court looks to the plain and ordinary meaning of the word "due." The dictionary definition of "due" as an adjective means "owed or owing as a debt" or "satisfying or capable of satisfying a need, obligation, or duty."[11] In this case, the amount owed by or due from the Board is the entire amount of the judgment with interest. However, that judgment could not have been effectuated without the work of the attorney, and its existence hinges on those fees and expenses. Therefore, the amount owed or due the offender is different from the amount owed by the Board: it is the sum of the judgment minus attorneys fees and expenses.[12]

The same result occurs in analyzing the phrase "*belonging* to . . . the offender." "Belong" is defined as "to be suitable, appropriate, or advantageous" or "to be in a proper, rightful, or fitting place, situation, or connection."[13] Here again, what is suitable, rightful, fitting, etc., requires enforcement of the contingency agreement before Karpierz could recover the balance in other words, before Karpierz could recover what is "belonging to" him.

This case is akin to *State ex rel. Nixon v. Turpin*,[14] which involved the State's right to reimbursement from money in a spendthrift provision of a trust. The court of appeals reversed the part of the trial court's judgment ordering the State to be reimbursed from the trust on a quarterly basis because such condition violated the trustee's discretion. However, once the trustee would distribute the funds to the inmate, it then would become property "belonging to" or "due" the inmate and be subject to MIRA. Here, similarly, the funds are not "belonging to" or "due" Karpierz until they have been distributed, but under MIRA's definition of "asset," such action entails paying McMullin pursuant to the contingency agreement.

The result gleaned from the intent of the legislature also suits the purpose behind MIRA, which is determined by considering the statute in context of the over-

---

8. *Newman v. Ford Motor Co.*, 975 S.W.2d 147, 154 (Mo. banc 1998) (citation omitted).

9. *Id.* at 155.

10. The plain and ordinary meaning of statutory language is generally derived from the dictionary where no definition is provided. *Curry v. Ozarks Elec. Co.*, 39 S.W.3d 494, 496–97 (Mo. banc 2001).

11. Webster's Third New International Dictionary 699 (1993).

12. "Due" defined in the noun form strengthens the argument: "something that is due or owed: something that rightfully belongs to a person or thing." *Id.* Here, again, at this stage, the only asset that *rightfully* belongs to Karpierz is the judgment less attorneys fees.

13. *Id.* at 201.

14. 994 S.W.2d 53, 57–59 (Mo.App.1999).

all statutory scheme.[15] That purpose is clear: to secure reimbursement expenses for housing the offenders. The most effective way for the State to realize the fruits of a potential lawsuit is for the offender to secure legal representation, even if that means the State will not see all of its expenses reimbursed. That is particularly true in this case, since Karpierz's CAFA action involved murky legal questions. Without McMullin's efforts, the State would recover nothing.

Although the State is correct that an attorney's interest in a judgment is typically treated as a lien, in this case, the phrase "property ... belonging to or due the offender" necessarily implies that the amount due the offender is the judgment and interest less the attorneys fees and costs. Such also would be the case, for example, with an offender's salary and wages under subsection 1(c) what is "due" the offender is the balance of salary and wages typically after taxes and social security costs have been deducted.

## VI.

The phrase "property ... *belonging* to or *due* the offender" must be read with an eye towards ascertaining the intent of the legislature and the purpose behind MIRA, and not in a fashion that would lead to an absurd result. To hold that the State is entitled to the sum of the judgment before attorneys fees were subtracted would give the State not only the proceeds of a judgment it could not access without the work of the private attorney, but also the attorneys fees necessary to procure that judgment. But for McMullin's risky litigation of Karpierz's CAFA action, the State would have nothing to recover. Moreover, inmates would be unable to obtain legal representation, which would be against public policy. The State's claim, then, is

against that which is properly due or belonging to Karpierz: the balance of the judgment after McMullin's fees and expenses are paid.

## VII.

The judgment of the trial court is reversed, and the case is remanded. On remand, the court shall determine the amount due under the contingency-fee agreement and enter judgment accordingly.

All concur.

**15.** *Fisher v. Waste Mgmt. of Missouri*, 58     S.W.3d 523, 527 (Mo. banc 2001).